NMA:EAG/JDG
F. # 2008R00530

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ –X

UNITED STATES OF AMERICA

    - against -                        Docket No. <u>09-CR-849 (BMC)</u>

THOMAS MCLAUGHLIN,

                Defendant.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ –X

<u>SENTENCING MEMORANDUM</u>

LORETTA E. LYNCH
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Elizabeth Geddes
James Gatta
Assistant U.S. Attorneys
    (Of Counsel)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………..1

BACKGROUND……………………………………………………………….3

DISCUSSION………………………………………………………………….4

I. Criminal History……………………………………………………4

A. Prior Arrests and Convictions………………………………….4

B. Crimes Disclosed by McLaughlin………………………………5

II. McLaughlin's Cooperation……………………………………………….6

A. United States v. Thomas Gioeli, et al…………………………………9

B. United States v. Andrew Russo, et al…………………………………10

1. Induction Ceremony…………………………………………...10

2. Murder of Joseph Scopo…………………………………………..12

3. Murders of Richard Greaves and William Cutolo………………………13

4. Robbery/Robbery Conspiracy……………………………………14

5. Fraud…………………………………………………………..14

a. Scheme to Defraud McLaughlin……………………………..14

b. Scheme to Defraud MoneyGram……………………………15

6. Extortion……………………………………………………...16

7. Loansharking……………………………………………………17

8. Illegal Gambling Operation……………………………………17

C. United States v. Joseph Collina, et al…………………………………..17

D. United States v. Carmine Persico……………………………………18

E. United States v. Joseph Petillo………………………………………19

**F.  United States v. Anthony Graziano, et al**…………………………………………**20**

**G.  United States v. Walter Samperi**………………………………………………**20**

**H.  United States v. Francis Guerra, et al**…………………………………………**20**

**I.  United States v. Louis Grasso**…………………………………………………**22**

**J.  Local 6A**……………………………………………………………………..**22**

**CONCLUSION**………………………………………………………………………**23**

<u>PRELIMINARY STATEMENT</u>

Pursuant to U.S.S.G. § 5K1.1, the government moves the Court, in its discretion, to impose a sentence below the applicable United States Sentencing Guidelines (the "Guidelines") range because of Thomas McLaughlin's substantial assistance to the government. As the Court is aware, McLaughlin waived indictment and pleaded guilty to racketeering conspiracy, involving, among other crimes, the murders of Frank Marasa, Gaetano Amato and Vincent Fusaro as predicate racketeering acts.

As further discussed below, among other assistance, McLaughlin has provided information crucial to the prosecution of dozens of members and associates of La Cosa Nostra ("LCN"). Specifically, between May 2009 and January 2011, McLaughlin wore a secret recording device and recorded well over 200 meetings and telephone conversations with members and associates of LCN. Relying primarily on those recordings as evidence, the government was able to obtain the following indictments: an indictment charging 39 defendants in <u>United States v. Russo</u>, Criminal Docket No. 11-0030 (KAM); an indictment charging Walter Samperi in <u>United States v. Samperi</u>, Criminal Docket No. 11-0004 (FB); an indictment charging two defendants in <u>United States v. Collina</u>, Criminal Docket No. 11-0032 (KAM); an indictment charging defendant Joseph Petillo in <u>United States v. Petillo</u>, Criminal Docket No. 11-0791 (FB); and an indictment charging defendant Carmine Persico in <u>United States v. Persico</u>, Criminal Docket No. 11-0845 (SJ). These recordings and McLaughlin's anticipated trial testimony contributed to the entry of guilty pleas by almost

every one of these defendants, some of whom were high-ranking members of the Colombo organized crime family of La Cosa Nostra (the "Colombo family").[1]

In addition, the government relied upon recordings made by McLaughlin in its prosecutions of Francis Guerra, also known as "BF," and Theodore Persico, Jr., in United States v. Persico, et al., Criminal Docket No. 10-0147 (SLT); Anthony Calabrese in United States v. Graziano, et al., Criminal Docket No. 12-0050 (CBA); and Louis Grasso, also known as "Ronnie Petrino," in United States v. Grasso, et al., Criminal Docket No. 12-0447 (SJ).

Finally, McLaughlin's cooperation assisted in the government's prosecution of Thomas Gioeli and Dino Saracino in United States v. Gioeli, et al., Criminal Docket No. 08-240 (BMC) ("Gioeli").

In total and as further detailed below, McLaughlin's information assisted the government in obtaining the convictions of the following individuals:

- Colombo family acting boss Andrew Russo;

- Colombo family street boss Thomas Gioeli;

- Colombo family underboss Benjamin Castellazzo;

- Colombo family consigliere Richard Fusco;[2]

- Colombo family captains Joseph Carna, also known as "Junior Lollipops,"[3] Theodore "Teddy Boy" Persico, Jr., Dennis Delucia and Reynold Maragni'

---

[1]     Every defendant except one was convicted by guilty plea.  The final Russo defendant, Ralph Scopo, died prior to trial.

[2]     Fusco passed away in 2013.

[3]     Carna passed away in 2013 while he was serving his term of incarceration.

- Colombo family acting captain Anthony Russo;

- Colombo family soldiers Daniel Capaldo, Emanuele Favuzza, John Maggio, Nicky Rizzo, Joseph Savarese, Ilario "Fat Larry" Sessa and Dino Saracino;

- Colombo family associates Ralph Arpaio, John Azzarelli, also known as "Johnny Cash," Daniel Bogan, Anthony Calabro, also known as "Nooch," Roger Califano, Michael Castellano, Giuseppe Destefano, also known as "Pooch," Joseph Dimarco, John Dunn, Anthony Durso, Scott Fappiano, Gaetano Gallo, Giovanni Galluzzo, Francis Guerra, also known as "BF," Ali Juseinoski, Carmine Persico, Joseph Petillo, Frank Pontillo, Jack Rizzocascio, John Rossano, Walter Samperi, Angelo Spata, Frank Senatore, Louis Venturelli, Joseph Virzi and Vito Vizzi;

- Bonanno family soldier Anthony Calabrese;

- Bonanno family associate Hector Pagan;

- DeCavalcante captain Joseph Collina; and

- DeCavalcante soldier Jerry Balzano

BACKGROUND

In December 1992, McLaughlin was arrested by officers of the New York City Police Department and charged with firearms trafficking. While he was incarcerated in connection with those charges, he was charged in a federal indictment in this District with racketeering conspiracy in connection with, among other crimes, McLaughlin's role in the Colombo family war. McLaughlin later pled guilty in both the state and federal cases, and received sentences that incarcerated him for 16 years.

McLaughlin was released in early 2008. In early 2009, agents of the Federal Bureau of Investigation ("FBI") approached McLaughlin about his role in the June 12, 1991 murder of Marasa, who was also known as "Chestnut." Shortly thereafter, McLaughlin agreed to cooperate and Stuart Grossman, Esq., was assigned to represent McLaughlin. McLaughlin candidly admitted his participation in the Marasa murder (which predated his

incarceration in 1992) and his participation in a conspiracy to use extortionate means to collect an extension of debt (which he committed while incarcerated and upon his release). He also admitted his participation in the murders of Gaetano Amato and Vincent Fusaro during the Colombo family war. He thereafter waived indictment and pleaded guilty to an information charging racketeering conspiracy, including the murders of Marasa, Amato on December 3, 1991; and Fusaro on December 6, 1991 and extortionate extension/collection of credit between December 2007 and May 2009. As a result of McLaughlin's guilty plea, his applicable Guidelines sentencing range is life imprisonment. (Pre-Sentence Investigation Report, dated Nov. 25, 2013 ("PSR") ¶ 131).

DISCUSSION

I.    Criminal History

During his cooperation, McLaughlin has detailed his criminal history for the government.

A.    Prior Arrests and Convictions

McLaughlin has three prior convictions for conduct he committed in the early 1990s. For this conduct, McLaughlin was incarcerated between December 1992 and March 2008, when he was released to a halfway house. First, McLaughlin has a conviction in Kings County for selling ounces of cocaine to an undercover officer on multiple occasions in 1992; McLaughlin was arrested for this conduct on December 21, 1992 and subsequently pled guilty to two counts of criminal sale of a controlled substance in the second degree and was sentenced to a term of imprisonment of six years to life. (PSR ¶ 99). Second, McLaughlin has a conviction in Richmond County for bribing a witness and for criminal sale of a controlled substance in the second degree. The bribery conviction stemmed from an attempt

by McLaughlin and his coconspirators to bribe a witness whom he and his coconspirators believed was going to testify against then Colombo family associate Joseph Savarese.[4] McLaughlin pled guilty to both counts and was sentenced to a term of imprisonment of six years to life, to be served concurrently to his Kings County conviction. (Id. ¶ 100). Finally, McLaughlin was convicted in this District of one count of conspiracy to distribute cocaine and one count of conspiracy to commit income tax evasion, and sentenced to 168 months' imprisonment.[5] (Id. ¶ 101).

B.     Crimes Disclosed by McLaughlin

McLaughlin has engaged in numerous other crimes, which he disclosed during debriefing sessions with the government.  First, McLaughlin admitted that prior to his incarceration in 1992, he engaged in murder, attempted murder, murder conspiracy, narcotics trafficking and firearms trafficking.  Specifically, in June 1991, McLaughlin, together with others, participated in the murder of Marasa (the basis for Racketeering Act One of the instant Information).  As detailed in the PSR, McLaughlin drove then Colombo family associates Dino Calabro and Richard Greaves to Marasa's residence, where Calabro and Greaves fatally shot Marasa.  McLaughlin then drove them quickly away from the scene.  In addition, McLaughlin was an active participant in the Colombo family war (the basis for

---

[4]     Savarese is now an inducted member of the Colombo crime family.

[5]     The plea agreement in that case provided that "[p]ursuant to Rule 11(e) (1) (C) of the Federal Rules of Criminal Procedure, [this] Office and the defendant agree[d] that a specific sentence of fourteen years' [168 months] imprisonment [wa]s the appropriate disposition" for that case.  Significantly, McLaughlin had been initially charged with his participation in the Colombo family war; although he did not plead guilty to this conduct, his conduct during the Colombo family war was included in the PSR prepared in connection with that case and was taken into account in determining the appropriate sentence to recommend.

Racketeering Acts Two through Four of the Information). McLaughlin was a member of the crew of Colombo family member Gregory Scarpa, Sr., and frequently accompanied members of Scarpa's crew, which was affiliated with the Persico faction, to track down and kill members of the opposing Orena faction. While McLaughlin never fired a shot during the war, McLaughlin readily admitted that if called upon, he would have done so. McLaughlin further admitted that in the early 1990s, McLaughlin funded his lifestyle through narcotics and firearms trafficking rather than any legitimate work.

McLaughlin also admitted that he committed crimes during his lengthy period of incarceration, including loansharking and operating an illegal gambling business. The loansharking scheme McLaughlin admitted formed the basis for Racketeering Act Five of the Information and is described in the PSR.

II.     McLaughlin's Cooperation

As noted above, McLaughlin has provided substantial cooperation in the government's longstanding and continuing investigation into LCN and in particular into the Colombo family. One of the five New York-based LCN families, the Colombo family, is a vast and violent criminal enterprise, which has included at times more than 100 inducted members and thousands of criminal associates. This enterprise exists to make money through crime, and relies on violence and threats of violence to do so. The Colombo family has earned millions of dollars from its diverse and illicit activity. Members and associates of the Colombo family have perpetrated scores of murders and other acts of violence to secure and protect these illicit profits.

McLaughlin cooperated in three important respects: he proactively cooperated by making hundreds of recordings of his meetings and telephone conversations with LCN

members and associates between May 2009 and January 2011; he testified about historical

information that he had as a result of his long-time associate with the Colombo family; and

he provided valuable information that has been and will continue to be used as intelligence to

further ongoing investigations of members and associates of LCN.[6]

        The substance of the recordings made by McLaughlin allowed the government

to prosecute dozens of longtime members and associates of LCN for their participation in

serious crimes. McLaughlin was able to obtain detailed admissions by many of these

individuals as a result of his longstanding association with the Colombo family; his

reputation for having committed numerous serious crimes, including murder; his familial

relationship with former Colombo family street boss Thomas Gioeli (McLaughlin's first

cousin); and his completion of almost 16 years' imprisonment without cooperating with law

enforcement. As a result, members and associates of LCN implicitly trusted McLaughlin,

and readily revealed confidences to him and included him in their plans to commit additional

crimes.

        Significantly, two individuals - Colombo family member Anthony Russo and

Colombo family associate Anthony Calabro - variously admitted their participation in three

murders: Russo admitted his participation in the 1993 murder of then Colombo family

underboss Joseph Scopo; Anthony Calabro admitted his participation in the 1995 murder of

Colombo family associate Richard Greaves and the 1999 murder of then Colombo family

underboss William "Wild Bill" Cutolo. (As described below, these recordings were not only

devastating evidence of Russo and Anthony Calabro's participation in murder, but also

---

[6]     The government anticipates that McLaughlin will agree to cooperate according
to the terms of his cooperation agreement as a condition of any term of probation or
supervised release imposed by the Court.

constituted overwhelming, independent evidence against the individuals Russo and Anthony

Calabro implicated in those homicides including Thomas Gioeli, Dino Calabro, Dino

Saracino, Joseph Competiello and Francis Guerra.) Numerous others sought McLaughlin's

assistance to commit crimes including robbery, loansharking, narcotics trafficking, illegal

gambling and fraud, and in so doing, explained their participation in those crimes.

   While the recordings made by McLaughlin amount to a wealth of evidence

against some of the most powerful members of the Colombo family, the effect of

McLaughlin's cooperation was potentially undermined as a result of certain actions taken by

McLaughlin. First, and most significantly, in the spring of 2010, the government learned that

McLaughlin had met with Joseph Savarese, who by then was an inducted member of the

Colombo family, without advising the government and without wearing a recording device.

(This indiscretion is particularly concerning because by doing so, the government missed an

opportunity to obtain valuable evidence from Savarese regarding an assault in February 2010

of an individual who was employed with Savarese at the New York Post.) Second,

McLaughlin was involved in multiple physical altercations during the course of his

cooperation. Specifically, in May 2010, McLaughlin punched an individual who spilled a

drink on him, and in July 2010, McLaughlin placed an individual working as a valet at a

nightclub in a head lock (for this conduct, McLaughlin was arrested and later required by the

Probation Department to attend an anger management course).[7] Nonetheless, the

government still views McLaughlin's cooperation as substantial.

---

[7] As the government advised the Court in its letter dated June 25, 2012, a warrant for McLaughlin's arrest was issued on or about June 12, 2012, for communicating threats, a misdemeanor. Upon learning of the warrant from his attorney, McLaughlin notified his probation officer and surrendered himself to law enforcement authorities and subsequently

The details of the substantial assistance provided by McLaughlin are set forth below.

A. United States v. Thomas Gioeli, <u>et al.</u>
Criminal Docket No. 08-240 (BMC)

McLaughlin's cooperation contributed to the government's prosecution of former Colombo family street boss Gioeli and soldier Dino Saracino for their roles in a long-standing racketeering conspiracy, including multiple murders as predicate racketeering acts. First, as noted above, McLaughlin recorded Colombo family associate Anthony Calabro admitting his participation in the murders of Richard Greaves and William Cutolo. Significantly, Anthony Calabro detailed how he participated in the murders with Gioeli, his brother Dino Calabro (who would later rise to the rank of captain within the family), Dino Saracino and Joseph Competiello (who like Saracino would become a Colombo family soldier), each of whom was charged in <u>Gioeli</u>. (While the government did not introduce this recording at trial, the government submitted a copy of the recording in support of the government's sentencing memoranda, which sought the maximum sentences permitted by law for both Gioeli and Saracino.) Second, McLaughlin, who was not only Gioeli's cousin but also a close friend and criminal associate of the members of Gioeli's crew, provided

---

was released on a $1,000 bond. (Prior to the issuance of the warrant, McLaughlin advised the government and his probation officer of an ongoing dispute he had with the complainant listed on the warrant, stemming from a joint business venture. Specifically, McLaughlin advised the government that he had learned that his partners in the business venture were planning to underreport the business's earnings and expenses to the Internal Revenue Service and as a result McLaughlin wished to disassociate himself from the business. Shortly before the warrant was issued, the defendant advised the government that he had retained an attorney who had sent a letter to the complainant and her husband seeking the return of monies invested in the joint business venture.) The charge was thereafter dismissed.

important historical information about the crew that substantially assisted the government in preparation for the trial of Gioeli and Saracino. Finally, although the government did not call McLaughlin as a trial witness as part of its case in chief, McLaughlin testified as a defense witness and in his testimony, implicated Gioeli in the Marasa murder, corroborating other evidence admitted during the government's case in chief. In part as a result of McLaughlin's trial testimony, a jury convicted Gioeli (and Saracino) of racketeering conspiracy and found proven Gioeli's participation in a conspiracy to murder Marasa as a predicate racketeering act.

      B.       United States v. Andrew Russo, <u>et al.</u>
                    <u>Criminal Docket No. 11-030 (KAM)</u>

On January 20, 2011, 39 members and associates of LCN were arrested in connection with the above-captioned case. Almost every one of the <u>Russo</u> defendants was prosecuted based primarily on recordings made by McLaughlin. These recordings and anticipated testimony by McLaughlin significantly contributed to the entry of guilty pleas by 38 of the 39 defendants. Had any of these individuals proceeded to trial, McLaughlin likely would have testified at trial against them. Some of the most important crimes disclosed by recordings are set forth below. The defendants were sentenced to terms ranging from probation to ten years' imprisonment.

      1.   <u>Induction Ceremony</u>

McLaughlin made a series of consensual recordings that made clear that the Colombo family continued to induct new members. The Colombo family intended to hold a secret ceremony at Emanuel Favuzza's residence on December 7, 2010. Ilario "Fat Larry" Sessa and three others were slated to be inducted into the crime family on that date with the

assistance of, among others, underboss Benjamin Castellazzo and acting captain Anthony Russo. The induction ceremony was canceled after FBI agents identified the location where the ceremony was to be held and conducted surveillance.

The events leading up to the scheduled ceremony and the aftermath of its cancellation were vividly captured on consensual recordings made by McLaughlin. In a consensual recording made on December 5, 2010, Anthony Russo and McLaughlin drove to Sessa's residence, where Anthony Russo engaged in a private conversation with Sessa. Following their private conversation, Anthony Russo and Sessa separately told McLaughlin that the ceremony at which Sessa would be inducted in the Colombo family would occur that week. McLaughlin also observed Sessa give Anthony Russo two plastic bags, one of which McLaughlin later learned contained the firearm to be used in Sessa's induction ceremony. Anthony Russo and McLaughlin then departed Sessa's residence and traveled to Favuzza's residence, where Anthony Russo dropped off the firearm. The following day, Sessa commented to McLaughlin about his embarrassment at having to "bring his own" firearm to his own induction ceremony. Sessa explained to McLaughlin that he had "three of these things . . . [U/I] .357 and a .38."

On the evening of December 6, 2010, the Colombo family canceled the ceremony. In light of the cancellation, Anthony Russo directed Sessa to retrieve the firearm he provided for the ceremony from Favuzza and Castellazzo. On a consensual recording, Sessa complained:

> What do you think happened, the whole thing's [the ceremony] dead . . . I had to back and get my thing [the firearm] . . . the whole thing is dead, everybody . . . I don't know, it came from Anthony [Russo] . . . Anthony comes meets me in Brooklyn, says I gotta tell you something . . . I figure he's gonna tell me

what time [i.e., the time of the induction ceremony], find out
what time . . . dead hand . . . that things no good go get it . . .
pistol, you want a different one? . . . the whole thing's dead, no
good . . . it's coming from this guy [Andrew Russo] . . . who he
met . . . mumbling something about this guy . . . I don't know
. . . [Anthony] makes me go all the way back to the place
[Favuzza's residence] to get the pistol . . . I didn't want to start
. . . I got three felonies too . . . I went back there, took care of
that . . . didn't say it [the ceremony] was postponed or anything,
said it's dead . . . didn't say postponed or dead said go back and
get the gun . . . I said what's happening . . . this guy [Andrew
Russo] shut it down, closed down or stopped it completely.

Based on this evidence, the government charged Anthony Russo, Sessa, Castellazzo, and

Favuzza with a violation of 18 U.S.C. § 924(c) for possessing a firearm in connection with a

crime of violence, namely, a racketeering conspiracy.

       2.    <u>Murder of Joseph Scopo</u>

       As noted above, in April 2010, Anthony Russo, an inducted member of the

Colombo family who later became an acting captain, admitted his participation in the murder

of Joseph Scopo, who was killed in connection with the Colombo family war.  Joseph Scopo,

who at the time of his murder was the Colombo family underboss and affiliated with the

Orena faction, and was the final Colombo family war casualty.  (Scopo was murdered as he

got out of the passenger seat of a vehicle parked in front of his residence in Ozone Park,

Queens on October 20, 1993.)  For example, in one recording, Anthony Russo explained to

McLaughlin that he was in a nearby vehicle while Colombo family associate John Pappa

fatally shot Joseph Scopo:

Anthony Russo:   I had my hat on. Hat flew off. I ain't kidding. And my side
                     window [U/I]

McLaughlin:     [U/I]

| Anthony Russo: | It came off. It came off. BF [Colombo family associate Francis Guerra] was in the backseat. He said, "What the fuck?" Are you crazy! I jumped out of the car. I was like a fuckin' mad hatter. I didn't know what to do. I started beep, beep, beep, beep. |
|---|---|
| McLaughlin: | What was [U/I] doing? |
| Anthony Russo: | Guy's up the block. I emptied out. You know what it is, the fucking? From behind? |
| McLaughlin: | I got shot. |
| Anthony Russo: | Do you know what it is to get it from behind. |
| Anthony Russo: | He [BF] was laughing hysterical in the back. You ever see a friend laughing? |
| [Laughing] | |
| McLaughlin: | Yeah, cause his hat didn't come off. |
| Anthony Russo: | No, cause he [BF] was in the car behind. |

Based on this evidence, the government charged Anthony Russo with the murder of, and conspiracy to murder, Joseph Scopo as a predicate racketeering act.

      3.   <u>Murders of Richard Greaves and William Cutolo</u>

Also, as noted above, in December 2010, Colombo family associate Anthony Calabro, also known as "Nooch," told McLaughlin about his participation in the murders of Richard Greaves and William "Billy" Cutolo. Specifically, Anthony Calabro told McLaughlin that he was going to be in the "jackpot" because he "drove for Billy," a reference to Cutolo's murder. Calabro then explained "all the details" of Greaves' murder, for which he was also present.

Although the government did not charge Anthony Calabro with this conduct as predicate racketeering acts, the government did charge him with his participation in a

racketeering conspiracy and in large part as a result of this recording, Judge Matsumoto sentenced Calabro to 41 months' imprisonment.

4. Robbery/Robbery Conspiracy

McLaughlin also made consensual recordings during which LCN associates admitted their participation in robberies and a robbery conspiracy. For example, LCN associate Scott Fappiano admitted on a consensual recording made by McLaughlin that he gave tips about potential robbery targets to a crew of individuals committing home invasions. Fappiano further admitted that he had stored some of the tools used in those robberies, but destroyed the evidence after those individuals were arrested. In addition, Fappiano tried to recruit McLaughlin and others to commit a $25 million score about which Fappiano had recently received a tip. Specifically, Fappiano told McLaughlin that the former owner of an oil company had recently sold his business and did not want to show the profits so he kept the proceeds in his residence in Staten Island and provided the address of the target to McLaughlin. Anthony Russo and Joseoph Savarese later agreed to assist in the robbery scheme. (The robbery never took place.) Based on this evidence, the government charged Fappiano, Anthony Russo and Savarese with robbery conspiracy as a predicate racketeering act.

5. Fraud

McLaughlin's cooperation also revealed various schemes to defraud.

a. Scheme to Defraud McLaughlin

Colombo family captain Reynold Maragni perpetrated a fraud against McLaughlin and another cooperating witness ("CW-1"), all of which was captured on consensual recordings made by McLaughlin. Specifically, Maragni engaged in a scheme to

attempt to defraud McLaughlin and CW-1 by pretending that he would bribe a public servant in the State of Florida to cause the commutation of the sentence of a relative of McLaughlin who had been sentenced to a lengthy term of imprisonment. On a consensual recording, Maragni explained that the amount of the bribe "could be anywhere from 25 to 50," i.e., $25,000 to $50,000, and later added that his contact "m[ight] turn around and tell me 100." Maragni vowed, "I'm gonna do everything I can, to let him agree to take as least amount as I can." In September 2010, McLaughlin traveled to Florida to meet with Maragni, who told McLaughlin that during the previous day, Maragni had met his contact, whom he described as a lawyer, for three hours. Maragni said that his contact asked for $80,000 to $85,000 to help McLaughlin's relative. Maragni later told CW-1 that the agreed-upon bribe was $80,000, to be paid in three installments.

In November 2010, on behalf of McLaughlin, CW-1 provided $25,000 to Maragni, representing the first of three planned payments. However, when Maragni subsequently advised CW-1 that he would not deliver the bribe money to his contact for several weeks, McLaughlin requested that Maragni return the money, and Maragni agreed. Maragni later admitted to law enforcement that he did not have any such contacts and that his actions were part of a scheme to defraud McLaughlin and CW-1.

b.      Scheme to Defraud MoneyGram

McLaughlin also made consensual recordings of Colombo family associate Michael Castellano regarding a long-time scheme to defraud MoneyGram of millions of dollars. On a consensual recording made by McLaughlin, Castellano explained in detail how he perpetrated the scheme. Specifically, he explained that Castellano acquired the requisite information to impersonate an employee at a MoneyGram outlet by entering a MoneyGram

outlet and using social engineering to obtain the particular outlet's identification number, which allowed employees at the MoneyGram outlet to identify themselves to a centralized MoneyGram location. Castellano then called the centralized MoneyGram location using a prepaid cellular telephone and a "spoofing" service that disguised the telephone number of the prepaid cellular telephone, impersonated an employee at the particular MoneyGram outlet for which he had just obtained the identification number, and placed an order for the transfer of MoneyGram funds to various MoneyGram outlets along the eastern seaboard. Colombo family associate John Rossano and others would then assist Castellano by driving him to the MoneyGram outlet and picking up the ordered funds by presenting fraudulent identification documents.

Based on this evidence, the government charged Castellano and Rossano with wire fraud.

6. Extortion

Anthony Russo detailed to McLaughlin a plan by the leadership of the Colombo family, including acting boss Andrew Russo, to extort $110,000 from the Gambino crime family. This information was significant because it shed light on the longstanding role that the Gambino and Colombo crime families have had in an annual Italian feast held in late August on 18th Avenue in Brooklyn, the Figli di Santa Rosalia. Based on this evidence, the government charged Andrew Russo, Benjamin Castellazzo (the underboss), Richard Fusco (the consigliere), Dennis Delucia (a captain) and Anthony Russo (an acting captain) with extortion, in violation of 18 U.S.C. § 1951.

7.  <u>Loansharking</u>

The recordings made by McLaughlin also revealed numerous plots to use extortionate means to collect debts.  For example, on a consensual recording made by McLaughlin in March 2010, LCN associate Scott Fappiano explained:

> I might need you . . . if I do it I'll go to jail . . . spoke to Reynold
> [Colombo family captain Reynold Maragni] . . . I want to be
> diplomatic . . . it gets to the point where he may have to get his
> fucking leg broken . . . I'll make sure I'm in court somewhere or
> doing a deposition . . . the last time I was in Punta Cana when
> they went to get him, he called the cops . . . he seen him coming.

Fappiano later provided McLaughlin with a slip of yellow paper that listed the debtor's name, business address, mother's address and other identifying information so that the cooperating witness could locate, assault and collect gambling losses owed by the victim.

Based on this evidence, the government charged Fappiano with extortionate collection, in violation of 18 U.S.C. § 894, as a predicate racketeering act.

8.  <u>Illegal Gambling Operation</u>

Bonanno family associate Hector Pagan confided in McLaughlin regarding a gambling operation run by Colombo family member Joseph Savarese and members of the Bonanno family.  Based on this evidence, the government charged Pagan with operating an illegal gambling business, in violation of 18 U.S.C. § 1955.

C.  United States v. Joseph Collina, <u>et al.</u>
    <u>Criminal Docket No. 11-32 (KAM)</u>

Consensual recordings made by McLaughlin formed the basis for the government's prosecution of DeCavalcante organized crime family captain Joseph Collina and soldier Jerry Balzano.  Based on recordings made by McLaughlin, on January 11, 2011, a grand jury returned an indictment charging Collina and Balzano with racketeering

conspiracy, in violation of 18 U.S.C. § 1962(d), including loansharking, possession of contraband cigarettes and possession of stolen tax refund checks as predicate racketeering acts.

Collina and Balzano ultimately pled guilty before trial. However, had either proceeded to trial, McLaughlin would have testified against him and his recordings would have constituted the main evidence introduced at such a trial. Collina was later sentenced to 16 months' imprisonment, and Balzano was sentenced to 19 months' imprisonment.

D.    United States v. Carmine Persico
      Criminal Docket No. 11-0845 (SJ)

McLaughlin provided information implicating Colombo family associate Carmine Persico in the use of extortionate means to collect and attempt to collect an extension of credit from an individual affiliated with the Gambino crime family (hereinafter, "Gambino Individual #1"). Specifically, Carmine Persico arranged for Theodore "Teddy Boy" Persico, Jr., to assist a criminal associate in obtaining payment of gambling winnings owed to the criminal associate, a degenerate gambler, by Gambino Individual #1. Theodore Persico, Jr., in turn recruited Russo to assist in the extortionate plan.

In October 2011, Carmine Persico was charged in a criminal complaint that relied, in large part, on consensual recordings made by McLaughlin. While Carmine Persico ultimately pleaded guilty in advance of trial, McLaughlin was available to testify against Carmine Persico at a trial and would have provided valuable testimony. Carmine Persico was later sentenced to 16 months' imprisonment.

E.      United States v. Joseph Petillo
        Criminal Docket No. 11-791 (FB)

Consensual recordings made by McLaughlin as well as his anticipated

testimony at trial contributed to the government's prosecution of Colombo family associate

Joseph Petillo for Petillo's participation in a conspiracy to participate in the use of

extortionate means to collect and attempt to collect an extension of credit in the amount of

$100,000 from an individual identified in the complaint against Petillo as John Doe.  A

consensual recording made on November 29, 2010 of a meeting among McLaughlin,

Anthony Russo and Petillo revealed that Petillo recruited Anthony Russo, then an acting

captain in the Colombo family, to seek the assistance of Reynold Maragni, who was a

captain in the Colombo family, to collect money owed by John Doe.

In October 2011, Petillo was charged in a criminal complaint that contained

the excerpts of the November 29, 2010 consensual recording.  While Petillo ultimately

pleaded guilty in advance of trial, McLaughlin was available to testify against Petillo at a

trial.  Petillo was later sentenced to 15 months' imprisonment.

F.      United States v. Graziano, et al.
        Criminal Docket No. 12-0050 (CBA)

Based in part upon a recording made by McLaughlin and information provided

by McLaughlin, Bonanno family soldier Anthony Calabrese was charged with racketeering,

including extortion and extortion conspiracy of an individual identified in the indictment as

John Doe #6.  The evidence established that Calabrese attempted to help Bonanno family

associate Hector Pagan collect illegal gambling winnings allegedly owed to individuals

associated with Pagan.  Calabrese pled guilty to one count of conspiring to participate in the

affairs of the Bonanno family through the collection of unlawful debt, in violation of 18

U.S.C. § 1962(d).  Calabrese was sentenced to six months' imprisonment.

G.    United States v. Walter Samperi
      Criminal Docket No. 11-0004 (FB)

McLaughlin made consensual recordings of Colombo family associate Walter

Samperi.  Based, in part, on these consensual recordings, Samperi was charged with

racketeering conspiracy.  While Samperi ultimately pled guilty in advance of trial, had he not

done so, the recordings made by McLaughlin would have constituted valuable evidence

demonstrating Samperi's continued participation in the Colombo family.  He was later

sentenced to "time served," which amounted to approximately 13 months' imprisonment.

H.    United States v. Francis Guerra, et al.
      Criminal Docket No. 10-0147 (SLT)

McLaughlin's cooperation also was instrumental in the government's case

against Colombo family captain Theodore "Teddy Boy" Persico, Jr., and powerful Colombo

family associate Francis "BF" Guerra.  Based in part upon consensual recordings made by

McLaughlin that the government intended to introduce at trial, Theodore Persico, Jr., pleaded

guilty before trial.  Guerra was convicted after trial of narcotics conspiracy and wire fraud.

With regard to Theodore Persico, Jr., on January 28, 2010, McLaughlin made

a consensual recording of a conversation in which Persico, Jr., told McLaughlin, "Get

Anthony [Russo] and get Joey Savarese.  Tell them to make a date.  A dinner date and we'll

all go for the dinner, all of us, the whole crew."   Later in the conversation, Persico, Jr., said

that "Anthony [Russo] and BF were supposed to hook it up," again referring to setting up a

dinner for Persico, Jr.'s crew.  Aware of this evidence, shortly before trial, Persico, Jr.,

pleaded guilty to conspiracy to commit the murder in-aid-of racketeering of Scopo – a crime he had ordered Russo and Guerra to participate in. He is awaiting sentencing.

McLaughlin's cooperation was also helpful to the prosecution of Francis Guerra. As noted above, McLaughlin made a consensual recording of Russo in which Russo admitted that he and Guerra (referred to in the recording as "BF") participated in the Scopo murder, and specifically admitted that Guerra was "in the car behind me." This recording was admitted at trial as a prior consistent statement by Russo, who testified as a cooperating witness. In addition, recordings made by McLaughlin were admitted in which Russo admitted that he and Guerra reported to Persico, Jr.; Guerra admitted that he was being considered for induction into the Colombo family and that he was planning an assault of an individual who had purportedly assaulted Guerra's female associate; and Guerra and Russo together admitted that they had closely monitored the trial of John Pappa, who had participated with them in the Scopo murder and had been convicted at trial of that murder.

Although a jury acquitted Guerra of racketeering conspiracy, on September 24, 2013, the Judge Townes found that the government had proven, by a preponderance of the evidence, that Guerra had participated in various crimes in connection with the Colombo family, including the Scopo murder and the assault of the individual who had purportedly assaulted Guerra's female associate, among other crimes. In announcing her findings, Judge Townes found that Anthony Russo had testified credibly, and she explicitly cited the recording in which Persico, Jr., referred to a planned dinner for his crew, the recording in which Guerra admitted that he was being considered for induction, and the recording in which Russo admitted that he and Guerra reported to Persico, Jr., as proof that Guerra

participated in the affairs of the Colombo family. Accordingly, Judge Townes sentenced

Guerra to 168 months' imprisonment, the high-end of the advisory Guidelines range.

I.      United States v. Grasso, et al.
        Criminal Docket No. 12-00XX (JG)

McLaughlin's cooperation assisted the government in its prosecution of LCN

associates Louis Grasso, also known as "Ronnie Petrino," for the July 2, 2010 robbery and

murder of James Donovan. Specifically, in October 2009, McLaughlin made a consensual

recording of Colombo family associate Nunzio DeCarlo,[8] in which he admitted his

participation in a burglary of the residence of a marijuana trafficker and described his plans

to perpetrate additional "scores" with Grasso. The government referenced this recording in a

motion to admit other acts, pursuant to Federal Rule of Evidence 404(b), that it filed in

Grasso. Although the government ultimately withdrew its motions to introduce an excerpt

from this recording, McLaughlin's information assisted the government with valuable

intelligence as to Grasso.

J.      Local 6A

Consensual recordings made by McLaughlin also assisted in suspending

various members of Laborers' International Union of North America ("LIUNA") who had

ties to organized crime. For example, McLaughlin's information was in proceedings by

LIUNA to exclude Russo defendants Roger Califano and Giuseppe DeStefano from Local

79. Had they not left voluntarily, McLaughlin's recordings would have been used in

LIUNA's proceeding to suspend Russo defendants Frank Senatore and Michael Castellano's

membership in Local 6A. Finally, and significantly, recordings made by McLaughlin, in

---

[8]     DeCarlo passed away prior to the government's prosecution in Grasso.

which Colombo family associates explained a scheme to earn money through Local 6A for the crime family and in which a Colombo family member referenced the crime family's control over Local 6A, was successfully used during a hearing to impose a trusteeship over Local 6A of LIUNA.

## CONCLUSION

As described above, McLaughlin has provided and continues to provide substantial assistance to the government. Therefore, the government respectfully submits this letter in support of its motion pursuant to Section 5K1.1 of the United States Sentencing Guidelines, to permit the Court, in its discretion, to depart downward from the applicable Guidelines range when sentencing McLaughlin.

Dated:      Brooklyn, New York
            May 12, 2014

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney
                              Eastern District of New York

                    By:   /s/ Elizabeth Geddes
                              Elizabeth Geddes
                              James Gatta
                              Assistant U.S. Attorneys


cc:     Stuart Grossman, Esq.